

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-17-00225-CV

———————————————

JAMES TOLIVER, Appellant

V.

CAREY DAVIS, Appellee

On Appeal from County Court at Law No. 1
Tarrant County, Texas
Trial Court No. 2015-000679-1

Before Sudderth, C.J.; Meier and Kerr, JJ.
Memorandum Opinion by Justice Kerr

## MEMORANDUM OPINION

Appellant James Toliver agreed to sell a truck to appellee Carey Davis for $14,000. The parties disagreed about whether Davis had paid the entire purchase price, and Toliver repossessed the truck. Davis sued Toliver for fraud and breach of contract. After a bench trial, the trial court found that Toliver had breached the contract and awarded Davis $9,600 in damages and attorney's fees, plus court costs. Toliver has appealed, raising two issues: (1) the evidence is legally and factually insufficient to support the trial court's conclusion that he breached the contract; and (2) the trial court erred by awarding Davis damages, attorney's fees, and court costs because he—not Toliver—breached the contract. We will affirm.

### Background

In June 2010, Davis and Toliver agreed that Toliver would sell a 2001 Peterbilt truck to Davis for $14,000. According to the parties' written contract, the purchase price was to be paid in two $7,000 installments, with the first payment due on June 4, 2010, and the second due on July 19, 2010. At trial, the parties (who were good friends) agreed that the payments were not made according to the contract's terms and agreed that Toliver—at Davis's request—allowed Davis, who was having financial difficulties, to make smaller payments over time.

Davis testified that after he made the first $7,000 payment in installments during the summer of 2010, Toliver gave him possession of the truck. According to Davis, he had paid the entire $14,000 purchase price by November 2010 but never

received title. Davis, however, testified inconsistently about the amounts he had paid and the payment methods (cash, cashier's check, or personal check) he had used to pay Toliver, and he admitted that he did not have documentary evidence proving that he had paid Toliver the entire $14,000 purchase price.

Toliver disagreed that Davis had paid the entire purchase price and testified that Davis had paid only $11,000. But Toliver admitted that he had not kept track of how much Davis had paid because Davis was doing so. In contrast to Davis's testimony that he had paid the entire purchase price by November 2010, Toliver said that Davis was still making payments in 2011 and 2012.

Davis maintained sole possession of the truck from the summer of 2010 through the end of 2012. Davis testified that in October 2012, Toliver contacted him about giving him title to the truck, but their work schedules kept them from meeting. Toliver denied offering Davis title to the truck because, according to Toliver, Davis had not paid the entire purchase price. Even though Toliver contended that Davis still owed him money under the contract, he never demanded payment from Davis or possession of the truck.

In late December 2012, Davis went to jail for not paying child support. When Toliver learned that Davis was in jail, he became concerned that someone other than Davis could be driving the truck, which could have subjected Toliver and his wife to liability because they were still the truck's title owners. Because of the potential

3

liability and because Davis allegedly still owed Toliver money for the truck, Toliver repossessed it on January 12, 2013. Davis was released from jail the same day.

Toliver claimed that in retaliation for the repossession, Davis and his wife harassed him and damaged his property, claims that Davis denied. After the repossession, Toliver demanded $7,000 before he would return the truck to Davis: $3,000 that he claimed remained due under the contract, and $4,000 for the property damage he claimed Davis and his wife had caused. In text-message exchanges following the repossession, Davis appears to concede that he still owed Toliver money under the contract. But Davis never paid Toliver, and about six months after the repossession, Toliver sold the truck to a third party for $9,000.

After hearing the evidence, the trial court entered judgment for Davis, concluding that Toliver had breached the contract, that Davis had suffered $6,000 in damages, and that Davis had incurred $3,600 in attorney's fees.[1]

Toliver timely requested findings of fact and conclusions of law and timely filed a notice when they were past-due, but the trial court did not file any findings and conclusions. *See* Tex. R. Civ. P. 296, 297. After Toliver filed an appellate brief complaining that the trial court's failure to make findings and conclusions prevented him from properly presenting his case on appeal and he was thus harmed, we abated

---

[1]The parties agreed at trial that Davis had incurred $3,600 in reasonable and necessary attorney's fees in this case.

the appeal for entry of findings and conclusions. In response to our abatement order, the trial court filed the following fact findings:

- In June 2010, Davis entered into an agreement to purchase a 2001 Peterbilt truck from Toliver for $14,000.

- The purchase price was to be paid in two installments of $7,000. When the first $7,000 was paid, the truck was delivered to Davis.

- On payment of the purchase price, the truck title, free of liens, would be delivered to Davis.

- Neither party kept an accurate or complete record of the payments Davis made toward the purchase price.

- The parties disagree as to the total payments made toward the purchase price.

- Toliver agrees that Davis paid at least $11,000 of the purchase price. In January 2013, without notice to Davis, Toliver repossessed the truck for alleged nonpayment of the balance of the purchase price.

- Without notice to Davis, Toliver sold the truck at a private sale to a third party for $9,000. Toliver retained all the proceeds from the sale.

- Toliver did not provide Davis with an accounting of the proceeds from the sale.

- Toliver refused to pay Davis the excess proceeds from the sale.

As relevant to this appeal, the trial court concluded that "[Davis] was damaged by [Toliver]'s breach of the sales agreement in the amount of $6,000.00 after granting all offsets and credits." Toliver filed an amended brief addressing these findings and conclusions. Davis did not file a brief.

**Standard of Review**

A trial court's findings of fact have the same force and dignity as a jury's answers to jury questions, and we review the legal and factual sufficiency of the evidence supporting those findings using the same standards that we apply to jury findings.[2] *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex. 1994); *Anderson v. City of Seven Points*, 806 S.W.2d 791, 794 (Tex. 1991); *see also MBM Fin. Corp. v. Woodlands Operating Co.*, 292 S.W.3d 660, 663 n.3 (Tex. 2009). When the appellate record contains a reporter's record, findings of fact on disputed issues are not conclusive and may be challenged for evidentiary sufficiency. *Super Ventures, Inc. v. Chaudhry*, 501 S.W.3d 121, 126 (Tex. App.—Fort Worth 2016, no pet.). We defer to unchallenged fact findings

---

[2]The legal- and factual-sufficiency standards of review are well established. We may sustain a legal-sufficiency challenge—that is, a no-evidence challenge—only when (1) the record discloses a complete absence of evidence of a vital fact, (2) the rules of law or of evidence bar the court from giving weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a mere scintilla, or (4) the evidence establishes conclusively the opposite of a vital fact. *Ford Motor Co. v. Castillo*, 444 S.W.3d 616, 620 (Tex. 2014) (op. on reh'g); *Uniroyal Goodrich Tire Co. v. Martinez*, 977 S.W.2d 328, 334 (Tex. 1998) (op. on reh'g), *cert. denied*, 526 U.S. 1040 (1999). In determining whether legally sufficient evidence supports the finding under review, we must consider evidence favorable to the finding if a reasonable factfinder could and must disregard contrary evidence unless a reasonable factfinder could not. *Cent. Ready Mix Concrete Co. v. Islas*, 228 S.W.3d 649, 651 (Tex. 2007); *City of Keller v. Wilson*, 168 S.W.3d 802, 807, 827 (Tex. 2005). When reviewing an assertion that the evidence is factually insufficient to support a finding, we set aside the finding only if, after considering and weighing all the pertinent record evidence, we determine that the credible evidence supporting the finding is so weak, or so contrary to the overwhelming weight of all the evidence, that the finding should be set aside and a new trial ordered. *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex. 1986) (op. on reh'g); *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986); *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex. 1965).

that are supported by some evidence. *Tenaska Energy, Inc. v. Ponderosa Pine Energy, LLC*, 437 S.W.3d 518, 523 (Tex. 2014).

We may review conclusions of law to determine their correctness based on the facts, but we will not reverse because of an erroneous conclusion if the trial court still rendered the proper judgment. *City of Austin v. Whittington*, 384 S.W.3d 766, 779 n.10 (Tex. 2012) (citing *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002)); *H.E.B., L.L.C. v. Ardinger*, 369 S.W.3d 496, 513 (Tex. App.—Fort Worth 2012, no pet.). That is, because a trial court's conclusions of law do not bind us, we will not reverse a trial court's judgment based on an incorrect legal conclusion when the controlling findings of fact support the judgment on a correct legal theory. *Wise Elec. Coop., Inc. v. Am. Hat Co.*, 476 S.W.3d 671, 679 (Tex. App.—Fort Worth 2015, no pet.).

## Discussion

In two issues, Toliver argues that the evidence is legally and factually insufficient to support the trial court's judgment that he breached the contract because the evidence conclusively establishes that Davis—not Toliver—breached the contract by failing to pay the full $14,000 purchase price.

The only fact finding that Toliver appears to challenge on appeal is the trial court's finding that Davis paid $11,000 of the purchase price. Toliver seems to argue that the evidence is legally and factually insufficient to support this finding because (1) Davis gave conflicting evidence about his payment methods and amounts;

7

(2) Davis's documentary evidence established that he paid Toliver only $8,200; (3) neither party kept accurate or complete payment records; and (4) Davis admitted in post-repossession text messages that he still owed Toliver money. But Toliver admitted at trial that Davis had in fact paid him about $11,000 and owed him $3,000 under the contract at the time he repossessed the truck. Applying the applicable standards of review, we conclude that the evidence legally and factually suffices to support this finding.

Next, Toliver challenges the trial court's legal conclusion that he breached the contract, contending that this conclusion is incorrect because Davis breached the contract, and the trial court thus erred by awarding Davis damages, attorney's fees, and court costs.[3] At trial, Toliver contended that even though the contract did not expressly provide that he could repossess the truck, he could nevertheless do so under Texas law[4] as a remedy for Davis's failure to pay the entire purchase price. Assuming without deciding that this remedy was available to Toliver and that Davis defaulted on the contract, that does not mean that Toliver was entitled to keep the $11,000 Davis

---

[3]Whether Toliver breached the contract is a legal question. *See E.P. Towne Ctr. Partners v. Chopsticks, Inc.*, 242 S.W.3d 117, 123 (Tex. App.—El Paso 2007, no pet.); *Bank One v. Stewart*, 967 S.W.2d 419, 432 (Tex. App.—Houston [14th Dist.] 1998, pet. denied).

[4]*See* Tex. Bus. & Com. Code Ann. § 9.609 (West 2011) ("Secured Party's Right to Take Possession After Default"). Toliver maintains on appeal that he was entitled to repossess the truck after Davis defaulted on the sales agreement but does not cite any legal authority as support.

paid under the contract plus all the proceeds from the truck's sale ($9,000). Under the contract, Davis was to receive the truck from Toliver in exchange for paying him $14,000. After Davis paid the first $7,000, Toliver delivered the truck to him, and Davis eventually paid Toliver an additional $4,000. But even if Davis breached the contract by failing to pay Toliver the remaining $3,000, Toliver would not have been entitled to anything more than the purchase price ($14,000). Accordingly, we hold that the trial court correctly applied the law by concluding that Toliver breached the contract and by awarding Davis $6,000 in damages, plus attorney's fees and costs. We therefore overrule Toliver's two issues.

## Conclusion

Having overruled both of Toliver's issues, we affirm the trial court's judgment.

/s/ Elizabeth Kerr
Elizabeth Kerr
Justice

Delivered: December 6, 2018